1

2

3

4

5

6

7

8

9

10

11

12

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

13

14

15

16

17

18

19

20

21

DEBRA BERRY

                Plaintiff,

    v.

YOSEMITE COMMUNITY COLLEGE
DISTRICT, *et al.*

            Defendants.

**Case No. 1:16-cv-00411-LJO-EPG**

**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SANCTIONS BE GRANTED TO THE EXTENT IT SEEKS TERMINATING SANCTIONS AND DENIED TO THE EXTENT IT SEEKS ATTORNEYS' FEES AND RECOMMENDING THAT PLAINTIFF'S MOTION FOR COUNTER SANCTIONS BE DENIED**

(ECF No. 67, 68)

22

23

24

25

26

27

28

    Plaintiff Debra Berry proceeds *pro se* and *in forma pauperis* in this civil rights action

brought pursuant to 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §

2000(d). On May 3, 2019, Defendants filed the instant "Motion for Sanctions for Plaintiff's

Discovery Abuse Violation of Court Order" against Plaintiff. (ECF No. 67) The motion is based

upon Plaintiff's refusal to provide testimony regarding her prior mental health treatment and

information about persons with whom she has lived within the past five years after being directly ordered to provide such information both in a written order and in a telephone conference during her deposition.

For the following reasons, the Court recommends that Defendants' Motion for Sanctions be granted in part and denied in part. The Court recommends that Defendants' motion be granted to the extent it seeks terminating sanctions and a dismissal of Plaintiff's suit with prejudice. The Court recommends denying Defendants' motion to the extent it seeks attorneys' fees in addition to terminating sanctions. The Court recommends denying Plaintiff's "Counter Motion for Sanctions for Outrageous and Abusive Conduct During Discovery and Violation of Court Order." (ECF No. 68)

## I.      BACKGROUND

Plaintiff filed this suit on March 25, 2016, against the Yosemite Community College District ("YCCD"); Modesto Junior College ("MJC"); Bryan Justin Marks, individually and in his official capacity as an Administrator and Associate Dean of Campus Life and Student Learning; Jackie Jordan, individually and in her official capacity as Administrator Librarian; and Granden McCarthy, individually and in her official capacity as an Administrator and College Campus Security Guard. (ECF No. 1)

### 1.  Factual Allegations in Plaintiff's Complaint

Plaintiff's Complaint generally alleges as follows. On September 22, 2015, from 12:00 p.m. to 12:45 p.m., Defendants Jordan, Bambrosia, and Carol took photographs of Plaintiff and other students of color without their consent and sent them to coaches at MJC. The coaches confronted the students about their disruptive behavior.

On October 5, 2015, a white student worker told Plaintiff that she had been sent by Defendants Jordan, Bambrosia, and Carol, to watch the African American students. From 12:30 to 12:35 p.m., Defendants Jordan, Bambrosia, and Carol approached Plaintiff and a group of students of color who were studying quietly. Defendants accused the students of making noise and stated that only five people could sit at the table. Defendants ignored a nearby table of five white students that were talking in the same quiet tone as Plaintiff and her companions.

Thereafter, Defendant McCarthy issued Plaintiff a verbal citation for being too loud and for having more than five students at the table. The same citation was not issued to the table of white students. McCarthy demanded Plaintiff's "W" number and identification and issued Plaintiff and others false charges of misconduct. These were intended to deter Plaintiff and others from pursuing their education.

On or about October 6, 2015, Defendant Carol and a non-party employee named Susan moved chairs from the general area where African American students studied. Only two tables and three chairs were left in the area. That same day, Defendant Bambrosia approached a group of African American students sitting quietly in a general studying area and told them that only four students could be at the table. She ignored five white students sitting at an adjacent table. Plaintiff observed this conduct but apparently was not one of the students initially approached. Bambrosia then asked Plaintiff whether she had anything to say. Later that day, Plaintiff observed Bambrosia harassing other African American students. Also that day, Defendant Carol intentionally assaulted Plaintiff by bumping into her chair hard without saying "excuse me" and while looking at Plaintiff with scorn.

At some point in October, several students lodged complaints regarding this behavior. It is unclear whether Plaintiff was one such student. Defendant Marks responded to the complaints by sending out "false notices" in an attempt to intimidate Plaintiff and others. The notices stated that the students had been reported for Disruptive Behavior and were required to schedule a meeting with Marks. Absent such a meeting, Marks would review the report and consider disciplinary action without the students' input.

On November 5, 2015, Plaintiff and others complained about a poster of Modesto Library Rules that had been placed on the wall. Plaintiff claims that the rules were intended to cover up discrimination toward Plaintiff and other African American students.

Plaintiff later received a letter from Marks stating that she had been reported for Disruptive Behavior and had failed to schedule a meeting with Marks as requested. The letter stated that Marks had determined that Plaintiff violated the Yosemite Community College District Standards of Conduct and was therefore suspended from use of the MJC Library Learning Center

on the MJC East Campus for approximately six weeks. Following the suspension, Plaintiff would be placed on disciplinary probation for one year. The notice outlined steps for Plaintiff to take to resume use of the MJC Library Learning Center following her suspension.

On March 7, 2017, the Court screened the Complaint and found that it stated the following cognizable claims: (1) a Fourteenth Amendment Equal Protection claim against Defendants Jordan, Bambrosia, Carol, McCarthy, and Marks in their individual capacities and injunctive relief in their official capacities; (2) a First Amendment retaliation claim for compensatory and punitive damages against Defendant Marks in his individual capacity; (3) a Title VI intentional discrimination claim for injunctive relief and compensatory damages against Yosemite Community College District and Modesto Junior College; and (4) a Title VI retaliation claim for injunctive and compensatory damages against Yosemite Community College District and Modesto Junior College. (ECF No. 6)

Notably, Plaintiff does not seek physical damages in this suit. As addressed below, Plaintiff does claim significant emotional distress damages.[1]

**2. Plaintiff's Failure to Obey Court Orders**

Defendants first deposed Plaintiff on December 5, 2018, but disagreement ensued over Plaintiff's refusal to answer a variety of questions. Pertinent to this motion, Plaintiff refused to provide information about her mental health history and persons she lived with. The following examples are illustrative:

Q. What type of treatment did you receive at South Bay Mental Health?

A. Objection, what type of treatment has nothing to do with why I'm here today.

Q. How long did you receive treatment at South Bay Mental Health?

A. Objection, I refuse to answer that question. It has nothing to do with why I am here today.

…

---

[1] The Honorable Magistrate Judge Michael J. Seng initially screened Plaintiff's Complaint. The case was later transferred to the undersigned.

| | | |
|---|---|---|
| Q. | How many people currently live with you? |

Q.      How many people currently live with you?

A.      Objection, personal question.

Q.      What are the names of the people that currently live with you?

A.      I object to that question, its personal. My personal life has nothing to do with why I am here today.

(Debra Berry Deposition I, p. 39, ll. 15-20; p. 334, ll. 21-25; p. 335, ll. 1-3).

Defendants then filed a motion to compel further deposition testimony from Plaintiff. (ECF No. 48) The Court heard argument on January 25, 2019. The Court granted Defendants' motion in part. It specifically ordered Plaintiff to, within 30 days of the order, provide a "written statement as to whether she claims emotional distress damages and, if so, the specific basis of that claim." (ECF No. 60 p. 2)[2]

On February 15, 2019, Plaintiff filed her written response to the Court's order. (ECF No. 62) She emphasized that she had suffered "humiliation and mental distress from being intentionally subjected to racial discrimination in Education by each of the Defendants as alleged within her civil rights complaint," and claimed, "damages for substantial emotional distress and punitive damages from her claims of sexual harassment and racial harassment." (*Id.* at p. 2-3) Plaintiff then cited numerous cases in which high amounts of emotional distress damages were awarded and argued that "uncapped emotional distress damages are recoverable under the post-Civil War Civil Rights Acts, 42 U.S.C. §§ 1981 and 1983." (*Id.* at p. 3)

On March 1, 2019, Defendants filed a supplemental motion to compel requesting, in part, that Plaintiff be compelled to provide further testimony under oath regarding her claim for emotional distress. (ECF No. 63) Specifically, Defendants sought to "understand the specific distress that Plaintiff has suffered from or is suffering from, how it has affected her, information regarding the self-administered 'spiritual treatment' she has undergone as a result, information regarding any potential contributing factors to her claim for emotional distress information regarding her past mental health conditions and treatment, and any other information that sheds light on the extent and/or severity of Plaintiff's alleged emotional distress." (*Id.* at p. 4) Defendant

---

[2] The Court denied the motion to the extent it sought sanctions, including terminating sanctions, against Plaintiff.

also sought information about persons Plaintiff currently lives with or lived with at pertinent times, contending that such persons might have observed changes in Plaintiff's demeanor, sleep patterns, and emotions.

On March 6, 2016, the Court issued an order holding that Plaintiff, by alleging substantial emotional distress damages, had waived the psychotherapist-patient privilege. (ECF No. 64 p. 3) Balancing the relevance of Plaintiff's emotional health with the need to ensure that discovery is proportional to the needs of the case, the Court ordered limited discovery:

> Thus, Defendants may obtain discovery pertaining to Plaintiff's mental health. Nevertheless, the Court will limit any such discovery to the treatments Plaintiff sought and the conditions for which Plaintiff sought treatment within the last five years only. In order to obtain additional information regarding such damages, the Court will permit Defendants to depose Plaintiff for no more than two hours on the record. The deposition shall take place in Modesto, California. The deposition shall be limited to the following topics: Plaintiff's claim for emotional distress (with the limitation described above regarding past mental health care), any cases Plaintiff was involved in within the last 10 years, and the persons Plaintiff has lived with in the last 5 years.

(*Id.* p. 4-5).

A second deposition was held on April 8, 2019. Plaintiff again refused to divulge information about her mental health treatment within the last five years and the persons she had lived with in that timeframe:

> Q.  Have you ever seen a psychologist for any reason within the last 5 years?
>
> A.  Yes.
>
> Q.  And who have you seen, what psychologist or psychologists have you seen within the last 5 years?
>
> A.  Objection. My medical history, my medical, my confidential and medical information has no direct bearing on this matter.
>
> Q.  You were specifically ordered by the court to answer those types of questions in connection with this deposition, do you understand that?
>
> A.  Absolutely.

| | |
|---|---|
| Q. | And you're refusing to answer them? |
| A. | My answer to your question is my personal and confidential medical records has [sic] no bearing in this matter and that's my answer to your question.[3] |
| … | |
| Q. | You previously testified that you lived with your sister at certain times; is that correct? |
| A. | Yes |
| Q. | Okay. And that's during the last 5 years; correct? |
| A. | Correct. |
| Q. | Okay. And what is your sister's name? |
| A. | Objection. Under the law I'm not at liberty to give anyone's personal and private information. She's a nonparty person. |
| Q. | So are you refusing to give me your sister's name or any other information about your sister? |
| A. | No, I'm not refusing. My answer to your question is I'm objecting by saying that under the law I'm not at liberty to give any personal and private information on a nonparty person, that's my answer to your question. |

(Debra Berry Deposition II, p. 423, ll. 1-17; p. 435, ll. 9-25) The parties called the undersigned during the deposition to determine whether Plaintiff had to divulge information concerning her previous mental health care, as well as information about the persons she had lived with in the last five years. The undersigned ordered Plaintiff to answer questions regarding her mental health treatment in the last five years and persons she had lived with in that timeframe:

> I have already ordered, and, in fact, that's one of the major bases why I had this additional deposition and after receiving briefing from the parties I have already ordered that defendants may take the discovery, in fact, that's the reason for the deposition so you do need to answer, Ms. Berry, questions regarding your mental health for the last five years. This does not mean necessarily that it will be admissible at trial. You will have another time to do that. It will be treated

---

[3] Plaintiff's refusal to answer questions about her mental health treatment continues for pages. *See* Debra Berry Deposition Transcript pp. 422-434. Plaintiff admitted seeing a psychologist at South Bay Mental Health Center during the past five years, but refused to divulge further details about her treatment or why she saw the psychiatrist. *Id.*

confidentially, and so if it hasn't been designated under a protective order it should be done, but you do need to answer those questions and those would include who you saw, why did you see them, what was any diagnosis from them, whether you have taken any medication, all of those things.

…

Also, I have already ordered that they may obtain the names of the people that you lived with, so I have on page 5 of my order one of the reasons, again, to take this deposition was the persons plaintiff has lived with within the last 5 years, so there's a court order already to disclose that. Also, you can give that information. Your sister, just because she's your sister and not you that doesn't mean that you can't give information, you don't have any contract to keep that confidential, there's not a legal reason why its confidential, so you or even your sister not wanting to disclose that is not a good reason. There's been a court order, you filed a case, they are entitled to discovery on information and that includes who you lived with and her contact information and her name.

(*Id.* at p. 433 ll. 19-25; p. 444, p. 445 ll. 1-9) The Court explicitly warned Plaintiff that failure to abide by the Court's orders could result in sanctions, including terminating sanctions:

Let me read the order again, and then I'm going to get off the phone, and she's going to ask questions, and if you do not abide by this order I will sanction you, and the sanctions could include dismissing your case, so let me tell you very clearly what I already ordered. I am reading from my order, this is Document 64, page 5, "Based on the foregoing, it is hereby ordered that: Defendants may obtain discovery pertaining to Plaintiff's mental health, limited to the treatments Plaintiff sought and the conditions for which Plaintiff sought treatment within the last 5 years," so anything regarding mental health is under this order. I already ordered it and you need to answer it or you will be sanctioned.

(*Id.* at p. 449, ll. 6-20) Nevertheless, after calling the Court and resuming the deposition, Plaintiff refused to provide information about her previous mental health treatment and persons she lived with in the last five years:

Q.      Okay. Ms. Berry, what is the name of the psychiatrist you saw with South Bay Mental Health in Los Angeles in approximately 2013 or 2014?

A.      Objection. I can't give anyone's name that's not related to this case. I don't know.

Q.      Why did you see the psychiatrist with South Bay Mental Health in Los Angeles in approximately 2013 or 2014?

A.      The psychiatrist that I seen [sic] had nothing to do with this case, I don't know what more I can tell you, that's personal and

8

confidential, and my personal and confidential medical records has no bearing in this case, and that's the best answer that I can give you.

…

Q.     What symptoms, if any, were you experiencing at the time you saw the psychiatrist with South Bay Mental Health in Los Angeles?

A.     Objection. The psychiatrist you're relating to, I don't know who you're speaking of, and they was not [sic], does not have anything to do with this case, so I don't know how to give you information on a psychiatrist that has nothing to do with this case.

…

Q.     What is your sister's name, your sister who you resided with during the last 5 years?

A.     Under the law I'm not at liberty to disclose any personal and private information on a nonparty person. My sister was not at MJC when the incidents took place, my sister does not know about this case, my sister is not a witness in this case, and I have no information regarding my sister and this case. If my sister was a part of this case I would be more than happy to give you her name, her address, and I think she would be able to do that herself; however, she's not a party to this case, and I'm not giving any of her information since she's not a party.

(*Id.* at p. 451, ll. 22-25, p. 452 ll. 1-10, p. 453, ll. 6-13, p. 457, ll. 24-25, p. 458, ll. 1-11).

On May 3, 2019, Defendants filed a "Motion for Sanctions for Plaintiff's Discovery Abuse and Violation of Court Order." (ECF No. 67) Defendants ask the Court to dismiss Plaintiff's case due to her refusal to obey Court orders to disclose her mental health history and the identifying information of persons she has lived with for the past five years. Alternatively, Defendants seek an order that Plaintiff is precluded from presenting "any claim or evidence of emotional distress and related evidence," as well as monetary sanctions of $3,955.00 that Defendants have incurred due to Plaintiff's malfeasance. (ECF no. 67, p. 2)

Plaintiff filed an "Opposition to Defendant's Motion for Sanctions for Discovery Abuse and Violation of Court Order and Counter Motion for Sanctions for Outrageous and Abusive Conduct During Discovery and Violation of Court Order." (ECF No. 68) Defendants filed a reply in further support of their motion on May 17, 2019. (ECF No. 70)

## II.    LEGAL STANDARDS

A district court may dismiss an action as a sanction for the party's failure to comply with discovery orders. *See* Fed. R. Civ. Pro. 37(b)(2)(A)(v), (d); *see also* Fed. R. Civ. Pro. 41(b). Additionally, the Court's inherent powers allow it to issue terminating sanctions. *See Lewis v. Ryan*, 261 F.R.D. 513, 519 (S.D. Cal. 2009) ("Dismissal sanctions under a court's inherent power may be imposed upon a finding of willfulness, fraud or bad faith.") (citing *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)). Dismissal is only appropriate when the plaintiff's noncompliance is found to be "due to willfulness, fault, or bad faith." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (citations omitted). Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate "willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (citations omitted).

Before ordering case-dispositive discovery sanctions, a court should consider and weigh the following five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *Conn. Gen. Life Ins. Co. v. New Hampshire Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (citations omitted). The Ninth Circuit has recognized that "where a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). The fifth factor has three subparts: "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins.*, 482 F.3d at 1096. "However, the Ninth Circuit has found it is 'not always necessary for the court to impose less serious sanction first, or to give any explicit warning.'" *Securities and Exchange Comm. v. Wu*, No. 11-cv-04988, 2016 WL 4943000 at *5 (N.D. Cal. Sept. 16, 2016) (quoting *Valley Eng'rs Inc.*, 158 F.3d at 1057). The Ninth Circuit has also explained that "case law suggests that warning a plaintiff that failure to obey a court order will result in dismissal can

suffice to meet the 'consideration of alternatives' requirement." *Malone v. United States Postal Service*, 833 F.2d 128, 132 (9th Cir. 1987) ("A plaintiff can hardly be surprised by a harsh sanction in response to willful violation of a pretrial order" even where the district court did not explicitly warn plaintiff that dismissal would follow violation of pretrial order); *see also Valley Eng'rs Inc.*, 158 F.3d at 1057 ("[T]he significance of warning is that a sanction may be unfair if the party could not have realized that it was in jeopardy of so severe a consequence if it was in error regarding its discovery posture.").

"This 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or script that the district court must follow." *Id.* (citation omitted)

The court may consider a party's *pro se* status in evaluating the willfulness of discovery violations and in weighing the other factors regarding dismissal, but lack of a lawyer does not excuse intentional noncompliance with discovery rules and court orders. *See Dettmanti v. Davies*, No. CV 13-3484-MWF (JPR), 2016 WL 649530 at *3 (C.D. Cal. Sept. 28, 2016) (citing *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000)) (affirming sanction of dismissal and holding that "[a] pro se litigant is bound by the litigation rules as is a lawyer, particularly here with the fulfilling of simple requirements of discovery"); *Gordon v. Cnty. Of Alameda*, No. CV-06-02997-SBA, 2007 WL 1750207 at *5 (N.D. Cal. June 15, 2007) ("[P]ro se plaintiffs must abide by the rules of discovery, and when they fail to do so in bad faith dismissal is warranted.") (further citation omitted).

### III.    ANALYSIS

#### 1.  Defendants' Motion for Terminating Sanctions

##### (a) Willfulness

After considering all relevant factors, this Court recommends terminating sanctions. Initially, Plaintiff's conduct in refusing to abide by Court discovery orders was willful, as there is no indication that Plaintiff's disobedience was outside of her control. *See Henry*, 983 F.2d at 948 ("This court has stated that 'disobedient conduct not shown to be outside the control of the

litigant' is all that is required to demonstrate willfulness, bad faith, or fault.") (citation omitted).

On March 6, 2019, the Court issued a written order directing Plaintiff to answer questions about her mental health treatment in the last five years, as well as persons she had lived with in that timeframe:

> Thus, Defendants may obtain discovery pertaining to Plaintiff's mental health. Nevertheless, the Court will limit any such discovery to the treatments Plaintiff sought and the conditions for which Plaintiff sought treatment within the last five years only. In order to obtain additional information regarding such damages, the Court will permit Defendants to depose Plaintiff for no more than two hours on the record. The deposition shall take place in Modesto, California. The deposition shall be limited to the following topics: Plaintiff's claim for emotional distress (with the limitation described above regarding past mental health care), any cases Plaintiff was involved in within the last 10 years, and the persons Plaintiff has lived with in the last 5 years.

(Doc. No. 64, pp. 4-5). Nevertheless, Plaintiff refused to answer pertinent questions at her second deposition. Accordingly, the Court conducted a telephonic conference and again ordered Plaintiff to answer questions regarding her mental health treatment at South Bay Mental Health Center and the identity and contact information of individuals with whom she lives:

> I have already ordered, and, in fact, that's one of the major bases why I had this additional deposition and after receiving briefing from the parties I have already ordered that defendants may take the discovery, in fact, that's the reason for the deposition so you do need to answer, Ms. Berry, questions regarding your mental health for the last five years. This does not mean necessarily that it will be admissible at trial. You will have another time to do that. It will be treated confidentially, and so if it hasn't been designated under a protective order it should be done, but you do need to answer those questions and those would include who you saw, why did you see them, what was any diagnosis from them, whether you have taken any medication, all of those things…
> …
> Let me read the order again, and then I'm going to get off the phone, and she's going to ask questions, and if you do not abide by this order I will sanction you, and the sanctions could include dismissing your case, so let me tell you very clearly what I already ordered. I am reading from my order, this is Document 64, page 5, "Based on the foregoing, it is hereby ordered that: Defendants may obtain discovery pertaining to Plaintiff's mental health, limited to the treatments Plaintiff sought and the conditions for which Plaintiff sought treatment within the last 5 years," so anything regarding mental health is under this order. I already ordered it and you need to answer it or you will be sanctioned.
> …

12

> All the questions about the psychiatrist you're going to answer who was the psychiatrist, when did you see the psychiatrist, what was the diagnosis, did you take medication, did you tell the psychiatrist about any symptoms, did you have any side effects from the medication, where is the psychiatrist, those and any related questions are the ones you need to answer.

(Debra Berry Deposition p. 443, ll. 19-25, p. 444, ll. 1-8, p. 449, ll. 6-20, p. 450, ll. 18-25, p. 451, l. 1).

But Plaintiff ignored the Court's orders and refused to answer pertinent questions such as the name of her treating psychiatrist, why she saw the psychiatrist, what she spoke to the psychiatrist about, what symptoms she was experiencing at the time she saw the psychiatrist, what treatment she received from the psychiatrist, or the diagnoses of the psychiatrist. (*Id.* at pp. 451-456) She also refused to reveal any mental health diagnoses she had within the last five years generally or information about persons she had lived with in that timeframe. (*Id.* at. p. 457, ll. 20-23, p. 458, ll.16-23) Plaintiff's willful disobedience of clear Court orders favors dismissal.

### b.    The Five-Factor Analysis

The five-factor analysis also favors dismissal. As Plaintiff disobeyed a clear and direct Court order, factors 1(the public's interest and the expeditious resolution of litigation) and 2 (the court's need to manage its docket) are presumed to weigh in favor of terminative sanctions. *See Adriana Intern*, 913 F.2d at 1412 ("Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against [sanctions]. Therefore, it is the third and fifth factors that are decisive.").

The third factor, the risk of prejudice to the party seeking sanctions, also weighs in favor of terminating sanctions. Plaintiff has not alleged physical damages, so the existence and scope of emotional distress damages will be a paramount issue in this case. As the Ninth Circuit has noted, "the most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (citation omitted). Plaintiff's refusal to comply with clear discovery orders convinces the Court that the true facts about Plaintiff's emotional distress damages will never come to light. Defendants' inability to obtain

13

information on these matters therefore "threatens to interfere with the rightful decision of the case," and is highly prejudicial to Defendant. *See Valley Eng'g Co.,* 158 F.3d at 1057 (noting that "[w]hat is most critical for case-dispositive sanctions, regarding the risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case'") (citation omitted).

As to the fifth factor, the availability of other sanctions, this factor also weighs in favor of terminating sanctions. The Court explicitly warned Plaintiff during her second deposition that failure to answer the questions at issue might result in case-terminating sanctions. Explicit warnings that recalcitrant behavior might result in case terminating sanctions are important considerations when assessing the fifth factor. *See Malone*, 833 F.2d at 132; *see also Wu*, 2016 WL 4943000 at *6 (emphasizing prior explicit warnings of terminating sanctions as justification for terminating sanctions). And when explicit warnings of terminating sanctions are given and ignored, the Court need not attempt lesser sanctions prior to terminating the case. *Sanchez v. Rodriguez*, 298 F.R.D. 460, 472 (C.D. Cal. 2014) (issuing terminating sanctions without first issuing alternative sanctions where plaintiff ignored warnings and threats of dismissal).

Moreover, although not mandatory given prior explicit warnings of terminating sanctions, the Court has considered alternative sanctions here, specifically, monetary sanctions and targeted sanctions dismissing Plaintiff's claim for emotional distress damages. The Court finds that alternative sanctions would be futile. "Warnings and threats of dismissal plainly have no effect on plaintiff. Thus, there is no reason for believing that a sanction less than dismissal would cause [her] to participate in this action." *Id.* (citing *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1170-71 (9th Cir. 2012) (affirming discovery sanction striking defendant's answer and rejecting defendant's argument that the fifth factor was not met because the district court did not first implement a lesser sanction and reasoning as follows: the fact that a court does not first impose a lesser sanction is not dispositive and "is just one factor;" when a court finds willful disobedience of court orders, it can reasonably conclude that lesser sanctions would be pointless; and it is appropriate for a court to reject lesser sanctions when it anticipates further misconduct); *In re PPA*, 460 F.3d 1217, 1229 (9th Cir. 2006) ("explicit discussion of alternatives is not necessary

for a dismissal order to be upheld" and "warning that failure to obey a court order will result in dismissal can itself meet the 'consideration of alternatives' requirement") (citation omitted).

And, as to monetary sanctions specifically, the Court notes that Plaintiff proceeds *in forma pauperis* and would likely lack the means to pay them, rendering such sanctions futile. *See Newman v. Brandon*, No. 1:10-cv-00687 AWI JLT (PC), 2012 WL 4933478 at *4 (E.D. Cal. Oct. 16, 2012) (issuing terminating sanctions and finding that monetary sanctions would be ineffective where the plaintiff lacked the ability to pay substantial monetary penalties).

In sum, the five factor analysis favors terminating sanctions here.

### c.    *Plaintiff's Arguments Against Sanctions*

Plaintiff advances several arguments against sanctions, none of which the Court finds persuasive. Initially, Plaintiff notes that the Court previously admonished Defendants for the length of the initial deposition and inappropriate deposition questions. It is true that, at the January 25, 2019 hearing, the Court expressed concern with the length of Plaintiff's initial deposition and some of the irrelevant questions asked therein. (Recording of January 25, 219, hearing on Defendants' Motion to Compel, available to the parties upon request) But that is not relevant to the instant motion. The Court has specifically ordered Plaintiff to answer questions regarding her mental health history and the identity of individuals living with her in the pertinent timeframe. Plaintiff refused to provide this information even after Court warnings of dismissal. Questions Defendants asked during the December 2018 deposition do not excuse compliance with Court orders.

Next, Plaintiff challenges previous orders of this Court, including its refusal to watch the entirety of her December 5, 2018 video deposition, its supposed refusal to consider her reply brief against Defendants' January 4, 2019 motion to compel discovery, its order requiring her to disclose information about persons she lived with within the last five years, and its finding that she had alleged unusually severe emotional distress damages, thereby waiving the psychotherapist-patient privilege. The Court addresses each in turn.

As indicated at the January 25, 2019, hearing, the Court reviewed the written deposition transcript of Plaintiff's December 5, 2018 deposition and Plaintiff fails to indicate how the

15

Court's refusal to watch the entire video deposition excuses her failure to obey clear Court orders here. *See* Audio recording of January 25, 2019 hearing of Defendants' Motion to Compel, which is available to litigants upon request.

As to Plaintiff's argument that the Court should have considered her reply brief in relation to Defendants' January 4, 2019 motions to compel (ECF Nos. 49-52), the argument is meritless because the Court, as it indicated on the record at the January 25, 2019 hearing, *did* consider this brief when ruling on the motions to compel. *See* Audio recording of January 25, 2019 hearing of Defendants' Motion to Compel, which is available to litigants upon request.

As to Plaintiff's argument that the Court erred in ruling that information about persons Plaintiff had lived with within the last five years is relevant, the Court notes that relevance in the discovery context is generally a low hurdle; such individuals might, for example, have information relevant to Plaintiff's claimed damages, such as whether they noticed changes in her behavior before and after the incidents at issue. At any rate, Plaintiff did not file a motion for reconsideration or appeal this ruling to the district judge, so it remains an order that Plaintiff was required to follow.

As to Plaintiff's argument that her mental health is not at issue in this litigation and that the Court inappropriately found a waiver of the psychotherapist-patient privilege, again, Plaintiff blatantly misrepresents the record. After the Court ordered Plaintiff to advise whether she intended to seek emotional distress damages in this case, Plaintiff submitted a declaration indicating that Defendants' alleged actions had caused "humiliation and emotional distress." (ECF 62 p. 2) and that Plaintiff was seeking "uncapped emotional distress damages." (*Id.* at 3) Plaintiff thus waived the psychotherapist-patient privilege by alleging unusually severe emotional distress damages. (ECF No. 64, p. 3) (citing *Engert v. Stanislaus Cty.*, No. 1:13-CV-0126 LJO-BAM, 2014 WL 5217301 at *2 (E.D. Cal. Oct. 14, 2014); *Curry v. United States*, No. 2:16-CV-2898-JAM-CMK, 2018 WL 347661, at *1 (E.D. Cal. Jan. 9, 2018).

Relatedly, Plaintiff's argument that her mental history is not at issue because she "made a typographical error in her reply regarding her emotional distress claim by stating mental instead of emotional in one place" is not persuasive. (ECF No. 68, p. 4). Any distinction between

16

"mental" and "emotional" damages is one without difference here. Whether labeled as "mental" or "emotional" damages, Plaintiff, by claiming entitlement to significant non-physical damages, has put her mental health history at issue. *See Curry*, 2018 WL 347661 at *3 (finding that, where Plaintiff alleges substantially severe emotional distress that is not of the "garden variety," the plaintiff waives the patient-psychotherapist privilege and information concerning her mental health history is discoverable). There is no separate category for non-physical, non-mental, "emotional" damages.

And regardless of Plaintiff's disagreement with the Court's orders, disagreement with the Court is not an excuse for failing to comply with its orders. *See e.g Chih-Cheng Tsao v. Cnty. Of Los Angeles*, No. CV 09-1268-JST(CW) (C.D. Cal. March 30, 2011) (finding terminating sanctions appropriate and noting that the plaintiff's disagreement with court orders did not justify noncompliance); *Adriana Intern. Corp.,* 913 F.2d at 1412 (same).

Next, Plaintiff argues that Defendants' counsel, Kellie Murphy, presents inaccurate facts in her motion for terminating sanctions designed to prejudice the Court against Plaintiff. Specifically, Plaintiff argues that she did not file her "Emergency Motion to Reschedule Deposition and for Appointment of Counsel" on the day of her initial deposition as Defendants suggest. The Court, however, is not troubled by the emergency motion and it does not factor into the analysis. Again, Plaintiff does not contest the crucial facts here: there were clear Court orders that she refused to follow.

Finally, Plaintiff claims she answered every question asked of her at the deposition. Plaintiff, again, misrepresents the record. Many of Plaintiff's "answers" were refusals to divulge information about her prior mental health treatment that she did not feel were relevant or were somehow privileged. But Plaintiff's opinion as to relevance and privilege do not control: the Court expressly held that Plaintiff put her mental health at issue in this litigation and ordered her to answer questions regarding her mental health treatment in the last five years. Plaintiff did not challenge this Court's ruling and her blatant failure to abide by it—even after warnings that her obduracy could lead to terminating sanctions—warrants dismissal. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court

may dismiss an action for failure to comply with any order of the court."); *see also Ahmed v. HSBC Bank USA*, No. ED CV 15-2057 FMO (SPx), 2018 WL 504672 at \*5 (C.D. Cal. Jan. 12, 2018) ("'Decisions by a magistrate judge on nondispositive motions are intended to be effective unless overturned by the district judge, just as decisions of a district judge are intended to be effective unless overturned by a circuit court.'" *(quoting Kimbrell v. ADIA. S.A.*, 834 F.Supp. 1313, 1317 (D. Kan. 1993)).

Plaintiff has not shown any justification for her repeated refusal to comply with Court orders, and the Court recommends dismissing her case with prejudice accordingly.

### 2. Plaintiff's Motion for Sanctions

In her opposition brief, Plaintiff purports to move for sanctions against Defendants as well. The Court recommends denying Plaintiff's counter-motion for sanctions. The request for sanctions has no notice, no supporting declaration justifying the sanctions requested, and no accompanying brief. Eastern District of California local Rule 230(b) requires that a moving party file a notice of motion, motion, accompanying briefs, affidavits, if appropriate, and copies of all documentary evidence that the moving party intends to submit in support of their motion. Plaintiff failed to file these documents and her motion disregards the Eastern District of California local rules; it should be denied accordingly.

The motion also lacks substantive merit. Plaintiff's briefing is difficult to follow, but she appears to rely on the following in support of her counter motion for sanctions: (1) that Plaintiff was a prevailing party as to Defendants' original January 4, 2019 motion for sanctions; (2) that Defendants have abused discovery regarding "personal questions that were asked of Plaintiff regarding her family, husband, children and mental health issues;" (3) that Defendants falsely represented to the Court that Plaintiff refused to attend her first deposition and that Plaintiff filed an emergency motion to reschedule deposition and for appointment of counsel on the same date that her first deposition was scheduled; (4) that Defendants have falsely represented to the Court that Plaintiff's mental health is at issue in this litigation; and (5) that "Defendants' conduct in the present case from the 9 ½ hour deposition, the 2 hour deposition and in all of their motions filed

18

with the Court has been extreme and outrageous and has had a severe and traumatize [sic] effect upon Plaintiff's mental health." (ECF No. 68, p. 8)

Initially, regarding Plaintiff's argument that she is entitled to sanctions due to the Court's denial of Defendants' initial motion for sanctions, the Court does not find sanctions are appropriate. The January 4, 2019 motion for sanctions—while unsuccessful—was not brought in bad faith. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) ("An award of sanctions under 28 U.S.C. § 1927 or the district court's inherent authority requires a finding of recklessness or bad faith.").

Nor does the Court find that Defendants' asking of personal questions warrants sanctions. The Court has found some personal information to be relevant, such as information about persons Plaintiff has lived with in the last five years. Defendants' use of Plaintiff's deposition to obtain this relevant information is acceptable. The Court did note during the January 25, 2019, hearing that it found some background questions irrelevant. The Court also noted that Plaintiff's deposition lasted seven hours and thirty-one minutes—longer than the 7 hours normally allotted by Federal Rule of Civil Procedure 30. However, the Court is not persuaded that sanctions are warranted. Indeed, irrelevant deposition questions does not, by itself, constitute sufficient annoyance or oppressive conduct contemplated by Federal Rule of Civil Procedure 30, which allows for the termination or limitation of an examination upon a showing that the deposition is being conducted in a manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent. *See In re Stratosphere Corp. Securities Litigation*, 182 F.R.D. 614, 619 (D. Nev. 1998) ("[T]he mere fact that more than one irrelevant deposition question is asked, or even that a series of irrelevant questions is asked does not, by itself, constitute annoyance or oppression contemplated by 30(d)(3)."). And while it is not clear that Plaintiff bases her sanctions request on Rule 30, the Court is reluctant to recommend punishment for conduct that does not violate that rule.[4]

---

[4] Nor has the Court found applicable authority issuing sanctions for a deposition that lasts a half hour over the time authorized in Rule 30, especially where the delay is at least partially attributable to disagreement between the litigants about the proper scope of deposition questions.

Turning to the allegation that Defendants made false representations to the Court, sanctions may be available under Rule 11 where a litigant makes factual statements to the Court that have no evidentiary support and will not likely have evidentiary support after a reasonable opportunity for further investigation or discovery. *See* Fed. R. Civ. Pro. 11(b)-(c). However, the Court finds no misrepresentations. Defendants do state that Plaintiff refused to attend her first deposition. (ECF No. 67-1, p. 1) Plaintiff disagrees with this characterization, instead arguing that she was unable to attend the deposition as scheduled. But the Court does not find that this difference of characterization amounts to a misrepresentation of fact. As for the disagreement over when Plaintiff filed her emergency motion, Defendants are correct that the motion was actually filed the day of the deposition; there is no misrepresentation.

Next, Plaintiff *did* indicate that her mental health history is at issue in this litigation. Plaintiff filed a notice with the Court explaining that she was seeking substantial emotional distress damages and citing to caselaw upholding large emotional distress damage awards. Defendants have not misrepresented Plaintiff's desire for such damages.

In all, the Court finds no basis upon which to sanction Defendants and recommends that Plaintiff's Counter motion for sanctions be denied.

### 3. Defendants' Motion for Attorney Fees

Defendants seek attorneys' fees in the amount of $3,955.90. According to Defendants, this figure represents the reasonable expenses and attorneys' fees incurred by Defendants in bringing the instant motion ($1,800.00), as well as attorneys' fees, videographer costs, and court reporter costs that were incurred in taking Plaintiff's deposition a second time, which resulted in a waste of time and money due to Plaintiff's refusal to comply with the Court's March 6, 2019 Order ($2,155.90). (ECF No. 67-1, p. 13) The Court recommends denying this portion of Defendants' motion.

Rule 37 provides for an award of monetary sanctions: "The court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Here, the imposition of additional monetary sanctions, in addition to the terminating sanctions, would be unjust. *See, e.g, Singh v. Hancock Natural Resources Group Inc.*, No. 1:15-cv-01435-LJO-JLT at *9 (E.D. Cal. Feb. 22, 2017) (refusing to award attorneys' fees to Defendants where Court issued terminating sanctions); *Reddy v. Precyse Solutions, LLC*, 2015 U.S. Dist. LEXIS 79352, 2015 WL 3797297 (E.D. Cal. June 18, 2015) (finding the plaintiff willfully refused to comply with discovery orders and imposing terminating sanctions, but denying an "an award for further monetary sanctions [as] unjust"); *Meador v. Macy's Corporate Servs.*, 2016 U.S. Dist. LEXIS 128163, 2016 WL 5085353 (D. Haw. Aug. 26, 2016) (finding "[A]warding monetary sanctions in addition to terminating sanctions would be unjust'"); *Townsend v. Idhe*, 2015 U.S. Dist. LEXIS 1496, 2015 WL 93768 (D. Mon. Jan. 7, 2015) (declining a monetary award where dismissal sanctions were imposed).

Additionally, awarding attorneys' fees would be incongruous here, as the Court bases its recommendation for an award of terminating sanctions, in part, on Plaintiff's inability to pay monetary sanctions.

For these reasons, it is recommended that Defendants' motion be denied to the extent it seeks attorneys' fees in addition to terminating sanctions.

## IV. CONCLUSION

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Defendants' "Motion for Sanctions for Plaintiff's Discovery Abuse and Violation of Court Order," (ECF No. 67) be granted to the extent Defendants seek terminating sanctions and dismissal of Plaintiff's case with prejudice;

2. That Defendants' "Motion for Sanctions for Plaintiff's Discovery Abuse and Violation of Court Order," (ECF No. 67) be denied to the extent Defendants seeks attorneys' fees in addition to terminating sanctions;

3. That Plaintiff's "Counter Motion for Sanctions for Outrageous and Abusive Conduct During Discovery and Violation of Court Order" (ECF No. 68) be denied; and

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the district judge assigned to the

case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(10). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 3, 2019**

/s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE